Filed 6/1/21  P. v. Pineda CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ALEJANDRO PINEDA,<br><br>        Defendant and Appellant. | B304786<br><br>(Los Angeles County<br>Super. Ct. No. VA126268) |

APPEAL from an order of the Superior Court of Los Angeles County.  Roger T. Ito, Judge.  Affirmed.

Thomas Ian Graham for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2011, defendant and appellant Alejandro Pineda was involved in two separate criminal incidents:  In the first, he assaulted and robbed Marc Wilkinson (Wilkinson); in the second, he was involved in a similar scenario during which Jaime Augustin Negrete (Negrete) shot and killed Hugo Ortiz (Ortiz).

After being charged with various crimes, in 2015, a jury convicted defendant of first degree residential robbery (Pen. Code, § 211; count 2);[1] assault with a firearm (§ 245, subd. (b); count 3); murder (§ 187, subd. (a); count 4); and first degree burglary (§ 459; count 8).[2]  He was sentenced to life in state prison without the possibility of parole, plus 25 years to life.  On direct appeal,[3] we reversed the jury's true findings on section 12022.53 enhancements attached to counts 3 and 8, and agreed with the parties that defendant's sentence on count 3 should have been stayed pursuant to section 654; we remanded the matter to the trial court with directions.  (*People v. Negrete* (May 30, 2017, B265670) [nonpub. opn.], p. 3 (*Negrete*).)

In 2019, defendant filed a petition for resentencing pursuant to section 1170.95.  After reviewing the petition, the People's oppositions, and defendant's replies, the trial court found

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Counts 1 through 3 related to the incident involving Wilkinson.  Count 1 charged defendant with attempted murder; the jury found defendant not guilty on this count.  Counts 4 and 8 concerned the incident during which Ortiz was killed.

[3]     The direct appeal was brought by defendant and Negrete.

that defendant had established a prima facie case and held an evidentiary hearing pursuant to section 1170.95, subdivision (d). Following the presentation of evidence and argument, the trial court denied defendant's petition, finding that he was a major participant in the underlying felony and acted with reckless disregard for life.

Defendant timely filed a notice of appeal, arguing that insufficient evidence supports the trial court's finding that he was a major participant in the armed robbery who acted with reckless indifference to human life.

Because the trial court's order is supported by substantial evidence, we affirm.

## FACTUAL BACKGROUND

*The Crimes*

On August 20, 2011, Wilkinson went to Los Angeles to buy marijuana from defendant. After meeting in a public parking lot, the men drove together in Wilkinson's car to a house in Bell Gardens. As soon as Wilkinson approached a detached garage at the residence, defendant shoved him. At that moment, two men approached Wilkinson with baseball bats, demanding money. One man hit Wilkinson in the leg, and Wilkinson struggled with the men. Then, a third man approached with a gun. All the while, defendant stood by the door. Wilkinson pleaded for his life, and the men took his money, phones, wallet, and knife. After threatening to kill him if he said anything, the men eventually walked Wilkinson to his car and let him drive away. (*Negrete, supra,* B265670, at pp. 5–6.)

Several months later, on December 17, 2011, Jaime Martinez (Martinez) agreed to go with Ortiz and Adam Rosales to meet up with defendant, who was acting as a "'middle man'" in a

3

drug transaction, at a doughnut shop. (*Negrete*, *supra*, B265670, at pp. 5–6.)

After a five-minute conversation at the doughnut shop, the group followed defendant to the Bell Gardens house. Once at the location, defendant told Ortiz to leave his gun behind in the car, and the men followed defendant to the detached garage. (*Negrete*, *supra*, B265670, at p. 6.)

As soon as the group entered the garage, they were "'ambushed'" by men with a wooden baseball bat and a gun. At some point, defendant struck Martinez with the bat. As this was occurring, Negrete shot and killed Ortiz. (*Negrete*, *supra*, B265670, at pp. 6–7.)

*Gang Evidence*

At trial, a gang expert testified that Negrete was a member of the Bratz gang and that the house where the crimes occurred was a long-standing Bratz location. He was not familiar with defendant and did not believe that he was a member of the gang. That said, the expert opined that the crimes were committed in association with or for the benefit of the Bratz gang. (*Negrete*, *supra*, B265670, at pp. 8–9.)

## PROCEDURAL BACKGROUND

On May 14, 2019, defendant filed a petition for resentencing pursuant to section 1170.95. At the initial hearing on December 9, 2019, the trial court granted an order to show cause and ordered an evidentiary hearing pursuant to subdivision (d). Also at that time, the parties stated that they did not intend to call witnesses at the evidentiary hearing, and they agreed that the trial court could consider the record of conviction.

At the January 16, 2020, evidentiary hearing, the trial court indicated that to prepare for the hearing, it had reviewed

4

"the entirety of the record of conviction including the trial transcripts."  It then detailed the facts of the crimes as follows:

"So [defendant] was, for lack of a better word, a . . . facilitator for two distinct robberies, one of which the victim's name was Mark Wilkinson, which predates the murder case—or should I say the felony murder case by about three or four weeks.

"And in that particular case Mr. Wilkinson and [defendant] had agreed to a drug transaction.  [Defendant] took Mr. Wilkinson to the location where the transaction was to take place.  Mr. Wilkinson had a substantial amount of cash with him.  Mr. Wilkinson was directed where to go and Wilkinson—[defendant] followed or I should say directed Mr. Wilkinson to go into a garage type location, which is according to testimony, is a known Bratz street gang hangout.

"Once in the location, Mr. Wilkinson relate[d] he was pushed by [defendant] into the garage or into that room and immediately confronted by multiple individuals armed with baseball bats, some of whom struck Mr. Wilkinson, and Mr. Wilkinson was threatened not by [defendant] but by two individuals who were at that location who pointed guns at him.  One racked a round and said words to the effect give us the money or we'll quote, unquote, 'Blow your fucking head off.'  Mr. Wilkinson complied.  [¶]  . . .  [¶]

"Subsequent to that date, [defendant] once again acted as a go-between or as a facilitator for a second transaction.  This time between several individuals who were the victims on the 187, the 211/187 case, an individual named Rosales, the victim Ortiz . . . .

"In any event, it's at least two individuals. . . .  [¶]  . . .  [¶] And those individuals were driven to the location by [defendant],

5

either were driven to or were accompanied to the location in a vehicle by [defendant]. [Defendant] instructed them to relinquish any firearms that they had in their possession at the time, that they were going to go into the garage area. Once again, the known Bratz gang hangout. [¶] . . . [¶]

"[Defendant] directed the three individuals, number one, to relinquish their firearms. I think it was Mr. Ortiz who had a firearm on him who removed it and put it under the car seat, and the three victims went into the location ostensibly for the purpose of purchasing methamphetamine.

"[Defendant]—there was statements, testimony to the effect that [defendant] told Ortiz and/or the other individuals don't bring a gun with you because there might be children or something to that effect. Then [defendant] and the three victims went into the location, whereupon [defendant] pushed one of the three victims, I think it was Mr. Martinez, to the ground. Martinez was then assaulted by individuals with baseball bats.

"Mr. Martinez relates that it was [defendant] who used a baseball bat on him. . . .

"So for the most part I think that is the extent of the fact pattern that was presented at the trial of both . . . [defendant] and Negrete. [Defendant] was convicted of the felony murder not as the actual shooter but as a participant, as an aider and abettor on that 211 count."

After some discussion by counsel of the sequence of events, the trial court continued:

"There were varying accounts of exactly the sequence that takes place in the garage. . . .

"But more specifically for my analysis I do want to note the following. I've had a chance to review the appellate record

6

which—in which the appellate court made some specific findings that are along the lines of the analysis that is used for 1437, 1170.95. That is specifically for the special circumstance to apply the law requires that the person be a major participant and that he act with reckless disregard.

"Those were analys[e]s that the Court of Appeal actually said, well, [defendant] was a major participant in the fact he acted with reckless disregard.[4] The analysis for 1170.95 purposes—I don't know if it's exactly the same analysis, but I'm going to go ahead and indicate for my own purpose I kind of reviewed it de novo.

"But keeping in mind that the Court of Appeal did make those findings, I'm not resting my own analysis exclusively to the Court of Appeal's analysis because I'm not quite certain that it's exact same analysis. I don't know if that was the intention, but I do know that was included in the special circumstance allegation. In order for him to find special circumstance, you have to have those two things as a nonshooter."

After defense counsel erroneously argued that our opinion in *Negrete*, *supra*, B265670, at page 16, deeming defendant a

---

[4]     It appears that the trial court is referring to our finding in *Negrete* that defendant "was a major participant in the burglary," by "lur[ing] Ortiz and his companions to the garage," disarming them, and then "actively participat[ing] in the 'ambush.'" (*Negrete*, *supra*, B265670, at pp. 16–17.) We also held that defendant acted with reckless indifference to human life by "actively participat[ing] in an armed robbery with known gang members," "purposely disarm[ing] Ortiz and his companions, leaving them helpless during an attack that he knew was going to occur. And, after the shooting, [defendant] fled the garage and failed to summon help." (*Negrete*, *supra*, B265670, at p. 17.)

"major participant" who acted with reckless disregard, predated *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*),[5] the trial court explained:

"I think we can all agree that *Banks* requires a multiple-part analysis as to the, quote unquote, 'culpability' of the nonshooter.

"And I want to make the following observation. In the hypothetical—I should say in the event that [defendant] had only been involved in the 211/187 as an aider and abettor, the argument in my estimation is much more compelling that his level of culpability would be lesser and this is why.

"Wilkinson, which predated the Ortiz murder, involved the same set of characters, involved a similar M.O., and most significantly my estimation Wilkinson was subjected to an enormously dangerous and scary predicament where he was threatened with firearms. He was told in no uncertain terms that his head would be blown off. They racked a round and they also used bats in assaulting Mr. Wilkinson in attempting to get or in fact succeeding to get—I think it was $9,000 he had on him for this elicit marijuana transaction.

"But [defendant] was present during that assault and was present during that robbery. And why I think that is significant is this. Because the second part of this analysis requires whether

---

[5]     Our opinion in *Negrete* was filed in 2017; *Banks* and *People v. Clark* (2016) 63 Cal.4th 522, 611 (*Clark)* were decided in 2015 and 2016, respectively. Defendant concedes this misstep in his reply brief, noting that *Banks* and *Clark* were decided after defendant's conviction and sentence.

or not he acted with reckless disregard, and that is more in line with what I've indicated with [*Tison v. Arizona* (1987) 481 U.S. 137]. Okay?

"This individual—in my estimation [defendant] had to be on notice of the level of brutality and violence that the Bratz gang members whom he arguably set up and orchestrated that initial robbery, that level of knowledge of their behavior, their level of violence, that the potentiality for enormous harm—in my estimation it's very, very possible Wilkinson would have been murdered as well, given the fact they had multiple firearms, they put guns to his head, they told him they would blow his fucking head off and they assaulted him with the bats. Any one of those things, the bats, the firearms, could have resulted in Wilkinson's death. . . .

"However, that fact pattern in my estimation is very compelling to determine whether or not [defendant] acted, number one, as a major participant, because it was quite certain from his own statement and from statements of others that [he] was the linchpin and the facilitator for both of these incidents.

"More specifically, on the second incident with Negrete and [defendant], [defendant] is the one that set it up. He is the one that disarmed—I should say Ortiz. He is the one that was perhaps not the mastermind, but the person who got it all set up. He was the individual, and he did not stay—the evidence was not that he stayed outside of the garage. The evidence was he did not stay in the car. He was not a getaway driver as in some of these circumstances are. He was not a passive bystander to the incident that occurred inside the garage. He was an active participant.

9

"And, [defense counsel], my estimation is because he was present when Wilkinson was assaulted, was robbed and there was a great deal of brutality involved, that in my estimation demonstrates his reckless disregard vis-à-vis the second incident. And that is because if he sees this happen to Mr. Wilkinson, he knows—in my estimation he would know that the level of violence or the level of defensiveness that's possible with now actual drug dealers . . . .

"[Defendant] was aware of this, and so the potentiality for harm is in my estimation exponentially greater. That is, you take guys in there that are perhaps prone to violence themselves, who arm themselves with firearms themselves, you disarm them, you put them into this closed environment where there's baseball bats and people armed with firearms . . . . [¶] . . . [¶]

"And along the lines of the *Banks* analysis, step 3, what awareness did the defendant have of the particular dangers posed by the nature of the crime, weapons used or past experience or conduct with the other participants? In my estimation that militates most certainly to that degree of reckless disregard.

"Factor number 4 was the defendant present at the scene of the killing in a position to facilitate or prevent the actual murder. . . . In my estimation that presence inside the garage, using a baseball bat, not running away or fleeing when the fight goes down, he is participating. He is part of this crime and he's using a dangerous, deadly weapon himself. Then finally after the fatal shot is fired, he runs away and then flees for some period of time out of the country."

The trial court tentatively concluded that "the D.A. would in fact be able to prove beyond a reasonable doubt that

10

[defendant] acted as a major participant and acted with reckless disregard for human life in the actual felony murder." After hearing further argument from defense counsel, the court reiterated that "[i]t's beyond a reasonable doubt."

## DISCUSSION

### I. *Relevant law*

Section 1170.95 provides a mechanism whereby people "who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973.)

In order to obtain resentencing relief, the petitioner must file a facially sufficient section 1170.95 petition and then satisfy two prima facie tests to demonstrate that he potentially qualifies for relief, thereby meriting an evidentiary hearing. (§ 1170.95, subd. (c).)

At the evidentiary hearing, the parties may rely upon evidence in the record of conviction or new evidence to demonstrate whether the petitioner is eligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecution bears the burden of proving, "beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3); see also *People v. Lopez* (2020) 56 Cal.App.5th 936, 942, review granted Feb. 10, 2021, S265974; *People v. Rodriguez* (2020) 58 Cal.App.5th 227 (*Rodriguez*), review granted, Mar. 10, 2021, S266652 [reaching same result albeit for a different reason]; *People v. Clements* (2021) 60 Cal.App.5th 597, 617–618, review granted, Apr. 28, 2021, S267624; *People v. Duchine* (2021) 60 Cal.App.5th 798, 813–814; *People v. Harris* (2021) 60 Cal.App.5th

939, 952, review granted, Apr. 28, 2021, S267802; and *People v. Hernandez* (2021) 60 Cal.App.5th 94, 103; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309 [holding that the prosecution need only prove "that the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder [under current law].  This is essentially identical to the standard of substantial evidence, in which the reviewing court asks '"whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. . . .  [¶]  . . ." [Citation.]'  [Citation.]"].)  Only if the prosecution cannot meet its burden is the defendant entitled to vacatur of the murder conviction and resentencing as set forth in section 1170.95, subdivision (e).

We review for substantial evidence the trial court's factual determination under section 1170.95, subdivision (d)(3), that the prosecution proved beyond a reasonable doubt that the defendant was ineligible for resentencing.  (*Rodriguez*, *supra*, 58 Cal.App.5th at p. 238.)

II.  *The trial court did not err*

The trial court properly denied defendant's petition for resentencing because at the evidentiary hearing, it determined, beyond a reasonable doubt, that defendant is guilty of murder under current law as a major participant in the burglary who acted with reckless indifference to human life.  (§ 189, subd. (e)(3).)  As set forth above, the trial court summarized and applied the relevant *Banks* and *Clark* factors to defendant's case.  In so doing, it noted that defendant facilitated and participated in a violent robbery just four months before the robbery/murder at

12

issue.  And, regarding the second incident, the trial court detailed defendant's unmistakable participation in and facilitation of the events that led to the murder.

In addition, the trial court expressly relied upon *Banks* and *Clark* in finding that defendant acted with reckless indifference to human life.  Specifically, defendant was present when Wilkinson was assaulted and robbed, thereby putting him on notice of the level of violence that could occur at one of these drug deals at the gang home.  And, during the December incident, defendant expressly disarmed the victims and then put them in a closed environment where people were waiting with baseball bats and firearms.  (*Banks*, *supra*, 61 Cal.4th at p. 803 & fn. 5.)

To the extent defendant characterizes the evidence differently and asks us to draw a conclusion different than the one reached by the trial court, his argument fails.  It is well-settled that when considering a challenge to the sufficiency of the evidence, we do not reweigh the evidence or redraw competing inferences from competing circumstances.  (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055–1056.)

**DISPOSITION**

The order denying defendant's section 1170.95 petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT


14